**Allen Levi MONROE, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 05–81–00891–CR.**

Court of Appeals of Texas,
Dallas.

Dec. 2, 1982.

Rehearing Denied Jan. 4, 1983.

Discretionary Review Granted
April 6, 1983.

Mike Gibson, Dallas, for appellant.

Henry Wade, Dist. Atty., R.K. Weaver, Asst. Dist. Atty., for appellee.

Before ROBERTSON, FISH and ALLEN, JJ.

ALLEN, Justice.

Appeal is taken from a conviction for voluntary manslaughter. Appellant was tried on an indictment charging him with the murder of Cathy Monroe, his wife. The

jury found him guilty of the lesser offense of voluntary manslaughter and assessed his punishment at 20 years in the Texas Department of Corrections and a fine of $10,-000.00. We affirm.

Four grounds of error are urged on appeal: (1) the jury received "other evidence" during deliberations entitling appellant to a new trial under Tex.Code Crim.Pro.Ann. art. 40.03(7) (Vernon 1979); (2) the jurors engaged in misconduct in violation of Tex. Code Crim.Pro.Ann. art. 40.03(8) (Vernon 1979) by discussing at the punishment stage of the trial the amount of time appellant would be required to serve from any given sentence; (3) the trial court erred in overruling appellant's objection to the prosecutor's improper jury argument; and (4) the trial court erred in admitting evidence of a transaction separate and apart from the offense charged.

In his first ground of error appellant contends that the trial court erred by its failure to grant a new trial based on the evidence presented at the hearing on his motion for new trial. Appellant claims that evidence improperly came before the jury during deliberations concerning the length of time appellant would actually serve for any given sentence.

Tex.Code Crim.Pro.Ann. art. 40.03 (Vernon 1979) provides:

New trials, in cases of felony, shall be granted the defendant for the following causes, and for no other:

.    .    .    .    .

(7) Where the jury, after having retired to deliberate upon a case, has received other evidence; or where a juror has conversed with any person in regard to the case; or where any juror at any time during the trial or after retiring for deliberation, may have become so intoxicated as to render it probable his verdict was influenced thereby. The mere consumption of alcoholic beverage by a juror shall not be sufficient ground for a new trial . . . .

Three jurors testified at the hearing on the motion for new trial. The jury foreman,

Noel Pittman, in his testimony estimated that during the jury deliberation on punishment the length of time appellant would have to serve in the Texas Department of Corrections on any sentence assessed was mentioned on two or three occasions. He testified that on each occasion he said to the jury that "the court had specifically proscribed such discussions and that we would not discuss that." A second juror, Allen Crosland, testified that he recalled a couple of times during deliberation on punishment it was mentioned that the defendant would not serve his full time. One of the jurors estimated that the defendant would serve approximately one-third of the time assessed. Juror Crosland testified further that the jury foreman reminded the jury that they were not to talk about the length of time the defendant would serve for any sentence given but were to concern themselves with the specific number of years they were to assess as punishment. He testified that no juror mentioned any particular case with which he or she was familiar. He remembered the foreman's admonishing the jury a "couple of times" that they were not to consider the length of time a defendant would serve on any given sentence. He further testified that statements were made two or three times during the deliberations on punishment with regard to the length of time a defendant would have to serve on a given sentence.

The third juror to testify was Sharon L. Tharp. She testified that statements were made two or three times during the deliberations on punishment with regard to the length of time a defendant would have to serve on a given sentence. She remembered a mention of the statements that "seven months equaled a year," and "if he is a good prisoner, he will be off in a third of his sentence." She testified that one juror mentioned a case where the defendant served less than the sentence given. She testified that the jury foreman instructed the individuals who made the statements that their statements were not within the realm of that which they were instructed to discuss in the jury room. She testified that the statements were not discussed. When

asked if she relied on the statements as being accurate she first answered, "No." In answer to a similar question she answered, "Well, I don't know." When the prosecutor persisted in propounding the same question in different ways, the witness testified that she did rely on the statements as being true and that the statements affected her verdict. The witness admitted that she possessed a general knowledge of the parole laws before appearing for jury service. The statement made which she claimed had affected her verdict was, "That he would serve only a third of the time assessed." She further testified that she knew that the jury was not supposed to consider the parole situation. She testified that she did consider the parole situation because somebody had to compromise. Juror Tharp told the trial judge that if the statements about parole had not been made she would have held out for a different verdict and would never have gone with the maximum sentence.

Appellant contends that the statements made during jury deliberations concerning good time and early release required the trial court to grant a new trial upon it being shown that Juror Tharp relied on the statements. The evidence adduced at the hearing on the motion for new trial proved that parole was mentioned two or three times during jury deliberation at the penalty phase of the trial. Each time it was mentioned before the verdict was reached, the jury foreman admonished the jury that the court had instructed them that they were not to consider the length of time one would serve on any sentence imposed and that they were not going to discuss that subject. No juror professed to know the law. The proof shows that no discussion was held on the statements made. Based on this evidence we must determine whether the trial court abused its discretion in refusing to grant a new trial so as to require reversal of the cause by this court.

The Court of Criminal Appeals in *Heredia v. State,* 528 S.W.2d 847, 850–53 (Tex.Cr. App.1975) appears to have set forth the test to be applied in determining grounds for reversal under Article 40.03(7) as being whether the jury received "other testimony" that was "detrimental to the accused" during jury deliberations. The court, after a thorough discussion of several cases involving the mention in the jury room of parole and length of time a convicted person might have to serve, stated:

> ... We adhere to those pronouncements in prior decisions that it is common knowledge that from time to time inmates in the Texas Department of Corrections are released on parole, e.g., *Taylor v. State,* Tex.Cr.App., 420 S.W.2d 601. Consequently the mere mention of this common knowledge would not constitute the receipt of other evidence, nor would a further discussion of it constitute receiving new evidence any more than discussion of any other matter of common knowledge by the jury.[2] On the other hand, information may be given to the jury, by a juror or someone else, which would constitute receiving other evidence. Information which would constitute other evidence would include for example, a juror relating his personal knowledge of some particular case from which the jury might then try to 'figure out' what the parole law is. Also, a misstatement of the law by being incorrect would constitute other evidence, since by being false it certainly could not be classified as 'common knowledge.' See e.g. *Moore v. State,* 171 Tex.Cr.R. 182, 346 S.W.2d 349. The receipt of such other evidence, even if nothing further be shown such as would constitute misconduct requiring a new trial under Section 8, on a proper set of facts[3] could require reversal under Section 7.

*Heredia,* 528 S.W.2d at 852–53.

In *Jones v. State,* 462 S.W.2d 578, 580 (Tex.Cr.App.1970) the court said that:

> A discussion of parole by a jury will not constitute reversible error, even where it is shown that one or more jurors changed his or their votes as a result thereof, unless it be shown that the statement was a misstatement of the law. *Johnson v. State,* Tex.Cr.App., 418 S.W.2d 834; *De La Rosa v. State,* 167 Tex.Cr.R. 28, 317

S.W.2d 544. See also *Edwards v. State,* Tex.Cr.App., 427 S.W.2d 629.

In *Demolli v. State,* 478 S.W.2d 554, 555 (Tex.Cr.App.1972) the Court of Criminal Appeals stated that there was no reversible error since "there is no showing . . . that a juror professed to know the parole law and made a misstatement of same." The second prong of this test was rejected by the Court of Criminal Appeals in *Heredia, supra.* In *Powell v. State,* 502 S.W.2d 705, 711 (Tex. Cr.App.1973) the test therein announced was that: "It must be shown that the statement was a misstatement of the law and that the juror relied upon this misstatement as an asserted fact." The cases here discussed appear to be consistent in holding that the mere mention of the parole law would not be such misconduct as would require a new trial. Further, the court holdings appear to be that the mention of parole in order to constitute "other evidence" coming within the meaning of Article 40.03(7) must be misstatements of the parole law.

▮ In the instant case the evidence on the motion for new trial showed a mention of good time credit, "like seven months was equal to one year" and a mention that "if he is a good prisoner he will be off in a third of the time or in approximately one third of the time." We emphasize that when such expressions of opinion were stated, the foreman of the jury immediately admonished the jury that they were not to talk about that and that they were to look at a specific number of years, not what one would serve. The statement concerning good time credit, allowing one to serve a year in seven months, is consistent with common knowledge and is generally the practice followed by the administration of the Texas Department of Corrections. Therefore, it is not a misstatement of the common practice.

The statement that if he is a good prisoner "he wouldn't serve his full time" or "would be off in a third of the time given," is a fairly accurate statement of the parole law as expressed in Tex.Code Crim.Pro. Ann. art. 42.12, § 15(b) (Vernon 1979). Ap-

pellant contends that the statements were misstatements of the law for the reason that Article 42.12 § 15(b) provides that when there is an affirmative finding that the appellant used a deadly weapon, as in this case, "he is not eligible for release on parole until his actual calendar time served, without consideration of good conduct time, equals one third of the maximum sentence . . . ." Appellant points out that the expression of opinion which Juror Tharp claims to have recalled and relied on was the following: "[I]f appellant was a good prisoner he would serve only a third of his time." We find this statement to be a substantially correct statement of the parole law, and is a matter of general common knowledge among citizens. Again we note that Juror Tharp knew from the court's charge that the jurors were not to consider parole in determining appellant's sentence. Consequently, the mere mention of this common knowledge could not constitute the receipt of other evidence in violation of Article 40.03(7). We again note that the prompt admonition by the jury foreman that these matters were not to be considered prevented any discussion.

The trial court had before it on the hearing on the motion for new trial disputed testimony as to whether or not one juror made a statement about a case he knew about in which the defendant did not serve his full time. Juror Pittman denied that any such statement was made to the jury. Juror Tharp testified that the statement was made but testified that she did not rely on the statement being accurate. It is apparent that such statement, if made, had no influence on the verdict in this case and therefore presents no ground for reversal.

If the two or three complained of statements were to be considered "other testimony" under Article 40.03(7), in view of the prompt instruction by the foreman and the fact that it was not thereafter discussed, we conclude that they cannot be construed as having been detrimental to appellant. *See Marquez v. State,* 172 Tex.Cr.R. 363, 356 S.W.2d 797 (Tex.Cr.App.1962); *Grizzell v. State,* 164 Tex.Cr.R. 362, 298 S.W.2d 816

(Tex.Cr.App.1956.) The determination as to whether or not the mention of parole did or might have prejudiced appellant's case must be made without reference to the testimony of Juror Tharp as to the effect the claimed misconduct might have had on the verdict in this case as such testimony would constitute an impermissible impeachment of the verdict. *Eckert v. State,* 623 S.W.2d 359, 365 (Tex.Cr.App.1981); *Adams v. State,* 481 S.W.2d 884, 886 (Tex.Cr.App.1972).

It has been the consistent ruling of the Court of Criminal Appeals that where an issue of fact is drawn as to what occurred in the jury room, the proper tribunal to decide that issue is the trial judge who hears the witnesses. *Beck v. State,* 573 S.W.2d 786, 791 (Tex.Cr.App.1978). It is apparent from the trial court's ruling in denying appellant's motion for new trial that all the conflicting fact issues were decided against appellant. We find no abuse of discretion on the part of the trial judge in denying appellant's motion for new trial as claimed by ground of error number one. *Beck,* 573 S.W.2d at 791.

Appellant in his second ground of error contends that the trial court erred by not granting his motion for new trial that alleged jury misconduct under Article 40.-03(8). The facts related in the first ground of error apply here. Appellant contends that the jury discussed the parole law during its deliberations on punishment. The State contends that no discussion of parole took place. Article 40.03(8) provides that:

> New trials, in cases of felony, shall be granted the defendant for the following causes, and for no other:
>
> . . . . .
>
> (8) Where, from the misconduct of the jury, the court is of the opinion that the defendant has not received a fair and impartial trial. It shall be competent to prove such misconduct by the voluntary affidavit of a juror; and the verdict may, in like manner, be sustained by such affidavit; and . . . .

It is well established that discussion of the parole law by the jury during its deliberations is always misconduct. *Sanders v.* *State,* 580 S.W.2d 349, 352 (Tex.Cr.App. 1978). Whether such discussion constitutes such error as to mandate reversal depends on the particular circumstances of each case. In *Heredia, supra,* Judge Odom, writing for the Court of Criminal Appeals, stated:

> For example, the mere mention of the parole law would not be such misconduct as would require a new trial. Likewise, a discussion of the parole law, followed by instructions that it should not be discussed, coming from the court in response to a message from the jury or coming from a juror after which it is not further discussed, would not be such misconduct as to require a new trial... What does constitute such degree of misconduct as to deny the defendant a fair and impartial trial must be determined upon the facts of the individual case.

*Heredia,* 528 S.W.2d at 853.

Judge Roberts, writing for the court in *Munroe v. State,* 637 S.W.2d 475, 478 (Tex. Cr.App.1982) (*en banc*) set forth the test for determining whether the trial court committed reversible error in refusing to grant defendant a new trial under the provisions of 40.03(8):

> [T]he defendant must show (1) that *any* discussion of the parole laws took place during the jury's deliberations (thereby showing jury misconduct), and (2) that the discussion denied him a fair and impartial trial. The latter requirement can be met by showing that even a single juror voted for an increased punishment because of the discussion of the parole laws.

*Munroe,* 637 S.W.2d at 478.

In *Munroe, supra, Sanders, supra,* and *Sweed v. State,* 538 S.W.2d 119 (Tex.Cr. App.1976), all cases that followed the above stated rule, discussion of the parole law was extensive. The discussions took place after jurors had declared for varying terms of years. One or more jurors then agreed to vote for an increased punishment because of the discussion.

■ The fact situation in the case before us differs greatly from the cases where reversal was granted under Article 40.03(8). To point out a few differences: (1) no discussion of the parole law was had; (2) there was no showing of more than one vote on punishment; (3) the mere mention of parole drew the immediate admonition of the jury foreman that it was not a proper consideration and would not be discussed. In the record before us there is no evidence that there was a discussion by the jury of the parole laws. Therefore, it fails to fall within the first prong of the test requiring reversal. We find no abuse of discretion on the part of the trial judge in denying appellant's Motion For New Trial for the reasons claimed by ground of error number two.

■ Appellant's third ground of error claims that the trial court committed reversible error by overruling appellant's objection to prosecutor's jury argument, contending that the argument calls upon community sentiment to coerce the jury into a verdict. The argument complained of is as follows:

*Prosecutor:* It is in evidence that this case has been carried by the newspapers. People are going to know what your verdict is, and I submit to you that people are going to be deterred.

*Mr. Gibson:* Object to that. That's calling upon community sentiment to cause this jury to return a verdict. It's improper argument and I object to it.

*The Court:* Overruled.

*Prosecutor:* .... because I submit to you that if you give this man probation, what you're saying in effect is that Dallas County, everybody is good for one free killing.

*Mr. Gibson:* Your Honor, I object to that. That is calling upon community sentiment to cause this jury to render a verdict, and I object to that form of argument on that basis.

*The Court:* Overruled.

*Prosecutor:* You might as well just paint a target on any unfaithful wife in Dallas County—

*Mr. Gibson:* Your Honor, I object to that. That's improper—that is an improper reference to the community in order to throw over the verdict of this jury.

*The Court:* Overruled.

We disagree with appellant's contention. We find that the prosecutor's arguments were a proper plea for law enforcement. The Court of Criminal Appeals has held that counsel for the State has the right, if not the duty, to make a proper argument for law enforcement. *Phillips v. State,* 450 S.W.2d 650, 651 (Tex.Cr.App.1970). *See generally McCall v. State,* 540 S.W.2d 717, 721 (Tex.Cr.App.1976); *Chatman v. State,* 509 S.W.2d 868, 869 (Tex.Cr.App.1974); *Bacon v. State,* 500 S.W.2d 512, 514 (Tex.Cr. App.1973). The trial court properly overruled appellant's objections to the prosecutor's arguments. Ground of error number three is overruled.

■ In his last ground of error appellant claims the trial court committed reversible error by improperly admitting evidence, over objection, of a separate transaction from the offense charged in the indictment. The record reflects that the prosecutor in his cross-examination of appellant proved, without objection, that the deceased, appellant's wife, had a wedding ring with a large solitary diamond that was approximately three carats in size. Appellant testified that his wife wore the ring most of the time. The prosecutor sought to show by his cross-examination of appellant that in a prior conversation with Mr. Don Nettle, appellant had stated that his wife wore her ring "all the time." At this point, the jury was retired and the question objected to was again propounded whereupon appellant made the objection that the question inferred an extraneous offense and, therefore, had no probative value. The objection was overruled by the court and thereafter in the presence of the jury it was established that appellant did remember his conversation with Mr. Nettle. At this point, the prosecutor asked appellant the following questions:

*Prosecutor:* Do you recall him asking the question, "Would you describe the de-

tails of what you know about the loss of the ring?" Do you recall him asking that question?

*Appellant:* Basically, yes, sir.

*Prosecutor:* Do you recall part of the answer being "She normally wore it, as far as I knew, all the time"?

*Appellant:* I could have said that, yes.

The prosecution contends that the question was asked in an attempt to lay a proper predicate for impeachment of the appellant by a prior inconsistent statement. "It is well settled that a witness may be impeached by proof of statements made by him out of court contrary to what he has testified at the trial, but only upon such matters as are relevant to the issue." *Bodiford v. State,* 158 Tex.Cr.R. 129, 253 S.W.2d 1004, 1006 (Tex.Cr.App.1953). A proper predicate must be laid for such impeachment. *Ellingsworth v. State,* 487 S.W.2d 108, 112 (Tex.Cr.App.1972). The matter of impeachment became moot when appellant answered that he did not deny saying in the prior conversation that, "She normally wore it, as far as I knew, all of the time." We do not agree that establishing through the appellant the normal habits of the deceased with regard to the wearing of her wedding ring, of itself infers an extraneous offense. We overrule appellant's fourth ground of error.

The judgment is affirmed.