**Gary Wayne PAYNE, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 05–85–01244–CR.**

Court of Appeals of Texas,
Dallas.

March 3, 1989.

Discretionary Review Granted June 7, 1989.

John H. Hagler, Dallas, for appellant.

Mary Jo Kain, Pamela Sullivan Berdanier, Dallas, for appellee.

Before ENOCH, C.J., and McCLUNG and BAKER, JJ.

BAKER, Justice.

On this remand, the sole remaining issue to be determined is whether the trial court's submission of the unconstitutional good time and parole instructions to the jury contributed to the punishment the jury assessed the appellant. We hold that the submission of the instructions was harmless beyond a reasonable doubt. We affirm the trial court's judgment.

Appellant was originally convicted of murder and assessed a life sentence. On

his appeal to this Court, he contended that the trial court erred in submitting good time and parole instructions to the jury on the grounds that the charge was predicated upon an unconstitutional statute. In an unpublished opinion, we rejected his challenge to the constitutionality of article 37.-07, section 4, of the Texas Code of Criminal Procedure. *Payne v. State*, No. 05–85–01244–CR (Tex.App.—Dallas, Dec. 9, 1986).

In his petition for discretionary review, appellant asserted two grounds of review, one of which was the constitutionality of article 37.07, section 4 of the Texas Code of Criminal Procedure. The Court of Criminal Appeals granted his petition on the constitutional issue only and agreed with his contention that the statute in question is unconstitutional. The court based this conclusion on its prior decision in *Rose v. State*, 752 S.W.2d 529 (Tex.Crim.App.1988). That court remanded this cause to this Court to conduct a harmless error analysis under Rule 81(b)(2) of the Texas Rules of Appellate Procedure. *See Rose*, 752 S.W. 2d at 554; *Haynie v. State*, 751 S.W.2d 878, 879 (Tex.Crim.App.1988).

Rule 81(b)(2) of the Texas Rules of Appellate Procedure provides the general harmless error test to be applied by appellate courts in criminal cases and states:

> If the appellate record in a criminal case reveals error in the proceedings below, the appellate court shall reverse the judgment under review, unless the appellate court determines beyond a reasonable doubt that the error made no contribution to the conviction or to the punishment.

TEX.R.APP.P. 81(b)(2). This standard requires a review of the entire record.

Appellant was convicted of murder. Because the charge was enhanced by a prior conviction for burglary of a building, the range of punishment was fifteen years minimum to a maximum of life or ninety-nine years with the possibility of a fine up to $10,000. The jury assessed a life sentence.

The voir dire of the prospective jurors was not transcribed. The evidence during the guilt/innocence phase of the trial reflected that appellant shot the brother of a person who had stabbed appellant's aunt to death. Appellant shot the intoxicated, sleeping, crippled man three times at close range. Prior to the shooting, appellant had threatened another not to reveal that he was going to kill the victim. Appellant also told other persons that he was going to kill the victim.

During the punishment phase of the trial, in addition to the evidence of the enhancement paragraph of appellant's indictment, the State introduced his prior record including three misdemeanor convictions for theft under $200.00, assault, and disorderly conduct. The trial court charged the jury on a deadly weapon finding in addition to the statutory good time and parole charges mandated by article 37.07 of the Texas Code of Criminal Procedure. No additional mitigating charge on good time and parole was requested or submitted to the jury. *See Rose*, 752 S.W.2d at 554.

During jury argument at the close of the punishment phase, neither State or defense counsel mentioned the parole instructions. The State argued the facts of the offense itself, appellant's prior record, and requested a life sentence. Appellant's counsel asked the jurors to consider the full range of punishment. During its deliberations, the jury sent a note which stated, "What is the earliest possible parole on a life sentence?" The trial court responded to the note by admonishing the jury to follow the instructions in the charge. Although the jury's note showed they were considering the parole instructions included in the charge, it does not necessarily follow that such consideration contributed to appellant's punishment in this case. The jury found appellant used a deadly weapon, found the enhancement paragraph true, and assessed the maximum of life.

Based upon the calculated, cold-blooded execution of a crippled, intoxicated, and sleeping man, together with the deadly weapon finding, and the appellant's prior convictions (revealing a propensity for violence), we hold that beyond a reasonable doubt the error made no contribution to

appellant's punishment. We affirm the trial court's judgment.

ENOCH, C.J., concurring.

McCLUNG, J., dissenting.

ENOCH, Chief Justice, concurring.

I concur that the judgment in this appeal should be affirmed. However, I state my reasons separately.

Rule 81(b)(2) of the Texas Rules of Appellate Procedure requires that for this Court to affirm the judgment of the trial court inspite of the erroneous instruction, we must conclude beyond a reasonable doubt that the jury instruction made no contribution to the punishment. However, we are charged to look to the record to determine whether there is *reasonable* doubt, not just any doubt, that the parol and good time charge made no contribution to the punishment received by Payne, life imprisonment.

This "harmless error" rule "promotes public respect for the criminal process by focusing on the underlying fairness of the trial rather than on the virtually inevitable presence of immaterial error." *Satterwhite v. State,* —— U.S. ——, 108 S.Ct. 1792, 1797, 100 L.Ed.2d 284 (1988); *Rose v. Clark,* 478 U.S. 570, 577, 106 S.Ct. 3101, 3106, 92 L.Ed.2d 460 (1986) (quoting *Delaware v. Van Arsdall,* 475 U.S. 673, 681, 106 S.Ct. 1431, 1436–37, 89 L.Ed.2d 674 (1986)).

Whether the jurors in this case actually did discuss and consider parole law and good conduct time, and to what extent and effect that had, can never be properly discovered and adequately determined. In this light, *Rose v. State,* 752 S.W.2d 529, 536 (Tex.Crim.App.1987), commands, "To gain any insight into the basis and rationale of a verdict one must resort to evidence admitted, the charge on punishment, argument of the parties and other relevant indicia of record, if any."

No purpose would be served in setting forth the evidence again, I would merely recite verbatim from Justice Baker's opinion. Suffice it to say, I agree that this killing of a mentally and physically impaired, sleeping victim was "cold-blooded."

I start my analysis with the point that the mere giving of the erroneous instruction does not require reversal. The dissent presumes harm from the giving of the instruction, which would require reversal without more. However, under *Rose,* to give the instruction is error, but harm, resulting in reversal, is not present in the absence of *other factors* that create reasonable doubt that the charge had no impact on the sentence imposed. I, therefore, look at the other factors.[1]

It is true, the jury assessed Payne a life sentence, but that fact, standing alone, cannot be a turning factor. *See* TEX.R.APP. P. 81(b)(2). Murder is a first-degree felony. TEX.PENAL CODE ANN § 19.02(b) (Vernon 1974). The punishment for a first-degree felony is confinement in the Texas Department of Corrections for life or for any term of not more than ninety-nine years or less than five years. TEX.PENAL CODE ANN. § 12.32(a) (Vernon 1974). In addition to imprisonment, a fine not to exceed $10,000 is permissible. TEX. PENAL CODE ANN. § 12.32(b) (Vernon 1974). No doubt, the legislature foresaw that under certain facts a murderer may not deserve a life sentence and, therefore, the sentencer was allowed a range of punishments to assess. In no event, however, could this punishment be less than five years' confinement. In this case, because the charge was enhanced by a prior conviction, the legislature provided that the range of punishment would not permit a minimum sentence of less than fifteen years. TEX.PENAL CODE ANN. § 12.42(c) (Vernon 1974). It is significant that there is no evidence in this record that

---

1. I do not disagree with the dissent that the State has the burden on appeal to show in the record that the error was harmless beyond a reasonable doubt. However, I have little concern for this issue because *Rose* still mandates that we, the appellate courts, review the whole record. Consequently, we are not free simply to say that, since the State has failed to affirmatively demonstrate the negative, we need not go further before concluding there is doubt as to harmlessness.

militates against the full sentence authorized by law. *See Zimmerman v. State,* 754 S.W.2d 402, 405 (Tex.App.—Corpus Christi 1988, no pet.). The punishment under the facts of this case casts no doubt in my mind, nor even the specter of a doubt that is *reasonable,* that the impermissible charge did contribute to the sentence.

The only other relevant factor to be considered is that the jury, during deliberations inquired, "What is the earliest possible parole on a life sentence?" In response, the trial judge replied, "You are instructed to consider only the evidence you have received from the witness stand along with the exhibits admitted into evidence and the law applicable to this case which is contained in the Court's Charge." The charge as given told the jurors not to consider parole and good time as it applied to Payne. The general presumption is that a jury follows the instructions given by the trial judge in the manner presented. *Gamez v. State,* 737 S.W.2d 315, 324 (Tex. Crim.App.1987).

The other opinions in this appeal note that the charge in this case contained no additional mitigating instruction on good time and parole. I do not ascribe to the view that this omission is critical, it just happened to be a circumstance that existed in *Rose. See Rose,* 752 S.W.2d at 554. It is inescapable to my way of thinking that unless the circumstances of the crime itself contain elements militating against a maximum sentence, the defendant receives no solace from the fact that the court did not charge a *second* time that the jury should not consider parole and good time. In this case, the jury was instructed:

> You may consider the existence of the parole law and good conduct time. *However, you are not to consider the extent to which good conduct time may be awarded to or forfeited by this particular defendant. You are not to consider the manner in which the parole law may be, applied to this particular defendant.*

(emphasis added). I recognize there is the view that because *Rose* ruled the parole instruction erroneous that no part of the

instruction should be accorded weight. However, it defies logic to conclude that error existed because the jury was presented an improper instruction, but in assessing the harm caused by the error, this court cannot consider what that instruction said.

Considering the other factors appearing in the record, the jury instruction given in this case did not, beyond a *reasonable* doubt, contribute to Payne's sentence. I, therefore, concur that the Judgment be AFFIRMED.

McCLUNG, Justice, dissenting.

I respectfully, but vigorously dissent. This case places before us the most singularly important question raised in all cases where the harmless error analysis is appropriate, *i.e.,* which party has the appellate burden under the "unless" clause contained in TEX.R.APP.P. 81(b)(2). I am compelled to write because the majority completely avoids addressing this vital issue. Instead, the majority converts the Court to a fact finding body, finds harmless error in evidence of appellant's prior record, and the majority's emotional revulsion to the heinous nature of this crime, and disregards important factors in the record.

I recognize that the facts of this case are particularly shocking. Yet, this is no more, or should be no more, than one of many factors to be considered in arriving at the decision we are called on to make in complying with the mandate on this remand. We cannot lose sight of the overriding concept that the rule of law must prevail in all such matters. To allow clear reasoning to become clouded by emotion or concern over the outcome is to succumb to the rule of the mob.

The Court of Criminal Appeals has remanded this case to this Court for the sole purpose of conducting a harm analysis under Rule 81(b)(2) of the Texas Rules of Appellate Procedure which provides:

> If the appellate record in a criminal case reveals error in the proceedings below, the appellate court shall reverse the judgment under review, unless the appellate court determines beyond a reasonable doubt that the error made no contri-

bution to the conviction or to the punishment.

We are, therefore, instructed that unless we determine, beyond a reasonable doubt, that the submission of the unconstitutional charge made *no* contribution to the conviction or the punishment assessed by the jury, we *shall* reverse the judgment. Our analysis does not address the issue of harm in the conviction, therefore, we focus on punishment.

We begin our analysis with it having already been determined by the Court of Criminal Appeals that error did occur when the court gave the charge to the jury as mandated by article 37.07, section 4, of the Texas Code of Criminal Procedure, more recently referred to as a *Rose* error. *See Rose v. State,* 752 S.W.2d 529 (Tex.Crim. App.1987).

Consequently, error having occurred, the rule goes on to instruct us that "the appellate court *shall* reverse the judgment under review, *unless* ..." (emphasis added). We now must determine which party has the burden under the "unless" clause. In short, does the "unless" clause put the appellate burden on the State to show that an error was harmless or does the "unless" clause put the appellate burden on the appellant to show harm. The issue is important because it will determine the outcome of most cases involving *Rose* error.

On this important issue, our sister courts of appeal have reached different conclusions. In *Caraveo v. State,* 752 S.W.2d 18, 19 (Tex.App.—Fort Worth 1988, no pet.), it was held "of course it was up to the State to prove beyond a reasonable doubt that the error was harmless." In *Herring v. State,* 752 S.W.2d 169, 174 (Tex.App.— Houston [1st Dist.]), *rev'd,* 758 S.W.2d 283 (Tex.Crim.App.1988), that court of appeals agreed. "We interpret rule 81(b)(2) to put the burden on the State to show that an error was harmless. This seems appropriate where the court, over objection, has applied an unconstitutional statute."

Nevertheless, the court in *Herring* held that the appellant had the burden of showing harm because of the then existing decisions of the Court of Criminal Appeals.

Thus, *Herring,* relied upon *Rose v. State,* 752 S.W.2d 529 (Tex.Crim.App.1987); *Almanza v. State,* 686 S.W.2d 157, 171 (Tex. Crim.App.1985) (op. on reh'g); and *LaPoint v. State,* 750 S.W.2d 180 (Tex.Crim. App.1988) (op. on reh'g). *Herring,* 752 S.W.2d at 174. All of these opinions preceded *Rose* on rehearing. *See Rose,* 752 S.W.2d at 552. Therefore, relying on these decisions, the court in *Herring* concluded that "[a]lthough we would hold that rule 81(b)(2) requires the State to prove that the error was harmless, we must follow *Rose, Almanza,* and now *LaPoint.* Appellant had the burden to show 'some' harm and has not done so."

Upon remanding, *Herring v. State,* 758 S.W.2d 283, 284 the Court of Criminal Appeals pointed out that the harm analysis had been conducted by that Court of Appeals under the *Almanza* standard and without the benefit of the rehearing opinion in *Rose.* Therefore, the case was returned for the now appropriate analysis in this situation under TEX.R.APP.P. 81(b)(2).

In *Foster v. State,* 687 S.W.2d 65 (Tex. App.—Dallas 1985), this court made a similar harm analysis using the test set out in *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), the forerunner of Rule 81(b)(2). The Foster court stated: "We must now determine whether the State has met its heavy burden of demonstrating that this error was harmless." Although not a "Rose" error as such, the error was a constitutional error of the admission of the fruits of an illegal arrest. The court held, "Applying this test, we are unable to determine beyond a reasonable doubt that this error was harmless." *Foster,* 687 S.W.2d at 66.

Consequently in all cases of *"Rose"* error, I would hold that the burden is on the State to show the error was harmless, and examine the *entire* record in that light. While doing so, we are ever mindful of the comments of Justice Teague:

I strongly suggest to the members of the courts of appeals that any time the issue is presented the members of the court of appeals make a careful harmless error analysis. Whether the error will or will

not constitute harmful error will, of course, as here, *be dependent upon the peculiar facts of the case.* The facts here that went to punishment would easily warrant any rational trier of fact to assess appellant's punishment at life imprisonment. As far as harmless error goes, I have viewed that issue from the standpoint of the facts that went to the assessment of life imprisonment. I caution the members of the courts of appeals: *When it comes to deciding whether the error was harmless, not all cases are going to nicely fit the facts of this case.* (Emphasis added).

*Rose,* 752 S.W.2d at 557. In *Rose,* 752 S.W.2d at 554, the Court of Criminal Appeals considered three circumstances which were apparent from the record in that case in reaching the conclusion from its rule 81(b)(2) harm analysis that the offending instruction did not contribute to appellant's sentence. First, the court noted the existence of a "curative instruction" in the charge following the *Rose* charge. *Rose,* 752 S.W.2d at 554. Second, the court observed that the facts militated in favor of a harsh sentence, and third, appellant's prior record.

It is apparent from the record in this case, that the facts would militate in favor of a harsh sentence and that appellant's prior record would likely contribute to the jury's assessment of punishment. There are, however, two additional and distinguishing, glaringly apparent factors in this record which I cannot overlook in this analysis as the majority seems to have done. The charge in this case *did not* contain the "curative instruction" that played such a vital role in the *Rose* decision on rehearing. *Rose,* 752 S.W.2d at 554. The second and most obvious distinguishing factor is that in this case, the jury sent out a note during their deliberation which asked the question, "What is the earliest possible parole on a life sentence?" The court's reply *was not* an admonishment as characterized by the majority but was an additional and supplemental instruction to the jury to use the unconstitutional charge to answer their question. Therefore, we have a direct instruction from the court to use the statutorily mandated, unconstitutional charge as the method to resolve their quandary and to ascertain or compute the earliest possible parole on a life sentence. This could only reinforce and encourage the jury to do exactly that and to utilize the time calculations set out in the offending charge in assessing punishment.

We generally presume, although the presumption is rebuttable, that a jury follows the instructions given by the trial judge, in the manner presented. *Cobarrubio v. State,* 675 S.W.2d 749, 752 (Tex.Crim.App. 1983). See also, in the context of instructions to disregard, *Nichols v. State,* 754 S.W.2d 185, 199 (Tex.Crim.App.1988); *Gardner v. State,* 730 S.W.2d 675, 696 (Tex.Crim.App.) *cert. denied,* — U.S. —, 108 S.Ct. 248, 98 L.Ed.2d 206 (1987).

Here, the judge flatly told the jury to use the information in the charge concerning parole in assessing this particular appellant's punishment. This is particularly significant because this was the judge's last word on the subject.

This communication from the jury and the nature of the court's response is very strong evidence that the unconstitutional charge did in fact make a contribution to the punishment. I would, therefore, hold that the unconstitutional charge made a contribution to the punishment assessed in this case. Any other conclusion flies in the face of logic and common sense.

In spite of the grossly brutal facts in this case, I would have to presume harm. The State offers nothing to rebut this presumption nor brings forward any suggestion or evidence that the error was harmless. Therefore, the State totally fails to meet its burden.

Consequently, I am unable to find, *beyond a reasonable doubt,* that this unconstitutional charge made no contribution to the punishment. I would reverse the judgment and remand the case to the trial court pursuant to article 44.29 of the Texas Code of Criminal Procedure.